IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
**U.S. District Court**
**District of Kansas**

01/27/2026

**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

| | | |
|---|---|---|
| YOSEF PAULOS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 25-3266-JWL |
| | ) | |
| KRISTI NOEM, Secretary, DHS; | ) | |
| TODD LYONS, Acting Director, ICE; | ) | |
| C. CARTER, Warden, FCI Leavenworth; | ) | |
| PAM BONDI, Attorney General; and | ) | |
| BRADLEY MACNAIR, Deportation Officer, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Petitioner filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials.  For the reasons set forth below, the Court **grants** the petition.  Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **February 6, 2026**, and shall provide notice to this Court when that release is effected.

Petitioner alleges that he was born in 1981 in Eritrea, although the area was considered part of the nation of Ethiopia at that time.  After fleeing to Sudan, petitioner was admitted to the United States in 1985, and he became a lawful permanent resident the following year.  In 2018, after a federal fraud conviction, petitioner was detained by immigration officials, and an order of removal (to Sudan or Eritrea) was entered by the immigration court.  In February 2019, petitioner was released, subject to an order of

supervision, after officials' efforts to obtain a travel document for him to Eritrea were unsuccessful. On June 9, 2025, petitioner was again taken into custody by immigration officials, and his order of supervision was revoked. On December 8, 2025, petitioner filed the instant habeas action; respondents have filed a response to the petition, petitioner has filed a reply brief, and the matter is therefore ripe for ruling.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, an alien's removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Petitioner claims that, after more than six months since he was taken into custody, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .

We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D.

Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." Over 7.5 months have now elapsed since petitioner was again taken into custody and a new removal period began – a significant period of time beyond the six-month period deemed presumptively reasonable by the Supreme Court. Officials have not succeeded in removing petitioner during that period, just as officials were unsuccessful in attempting to remove petitioner in 2019. Petitioner asserts – and respondents do not dispute – that by July 2025, Ethiopia had formally denied a request for a travel document for petitioner, while a request to Eritrea remained pending. Petitioner further asserts – and respondents do not dispute – that after an interview of petitioner in October 2025 two immigration officials recommended petitioner's release from detention because his removal to Eritrea was not likely in the foreseeable future. Although petitioner was told in November 2025 that officials would likely obtain a travel document from Eritrea and that a flight was therefore being scheduled for mid-December (a fact not disputed by respondents), the Eritrean Embassy confirmed to petitioner on December 1, 2025, that no travel document had been issued for him. No such flight took place in December. Eritrea has still not responded to the travel document request made in July 2025, and respondents have not identified any alternative country to which petitioner might be removed.

The Court further finds that respondents have not rebutted petitioner's showing by providing evidence establishing that there is a significant likelihood of removal in the

4

reasonably foreseeable future. Respondents note that officials have attempted to obtain a travel document from Eritrea, but, again, there has been no response to that request over the last six months. Neither respondents nor their declarant (an immigration official) has offered any reason for the lack of any response, and thus there is no reasonable basis to believe that Eritrea will respond positively in the reasonably foreseeable future. The declarant also states that in November 2025 officials began an attempt to schedule a flight to Eritrea for petitioner using a particular form in lieu of a travel document, but that officials then learned that layover countries, through which petitioner would pass, required a travel document. The declarant states that officials are waiting for a "workable travel route," but no explanation is given concerning how and when such a workaround could be accomplished, and thus there is no basis to believe that such a workaround is likely to occur. Moreover, there is no evidence that officials have made inquiries to any other countries in the last six months, nor have respondents or the declarant identified an alternative country to which petitioner might be removed in the future. *See, e.g*, *Manago v. Carter*, 2025 WL 2841209, at *2-3 (D. Kan. Oct. 7, 2025) (citing similar facts in concluding that the respondents failed to rebut the petitioner's showing under *Zadvydas*). This lack of explanation or analysis is especially disheartening in light of this Court's repeated complaints about such omissions in the Government's submissions. *See, e.g.*, *Gonzalez Gutierrez*, __ F. Supp. 3d at __, 2025 WL 3454295, at *2-3.

In sum, it appears that immigration officials are relying solely on the possibility that they may eventually receive the necessary travel document for petitioner sometime in the future. Such speculation or hope is not sufficient, however. Respondents have not been

able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials have not received a response to their request for the necessary travel document, and even though they have seemingly made no efforts regarding other countries in the last six months, petitioner will nonetheless be removed in the reasonably foreseeable future. Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **February 6, 2026**.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **February 6, 2026**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 27th day of January, 2026, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge